## Estate of Sophia Walton, Deceased.  Appeal of Eliza Knowles and Anne Knowles.

*Will—Codicil—Execution.*

A codicil not attested by one of the subscribing witnesses in the presence of the testatrix is validated by a subsequent codicil properly executed and attested, and containing an express republication of both the will and first codicil.

*Will—Issue devisavit vel non—Undue influence—Confidential relations.*

The rule that a person holding a confidential relation to a testatrix is bound to give affirmative proof that the will was the intelligent act of the testatrix does not apply where it appears that, by a previous will with which the beneficiary had nothing to do, testatrix had given the beneficiary

precisely the same legacy as contained in the second will; that contestant received a large money legacy by the second will, whereas she received practically nothing by the first will, and that testatrix had instructed the beneficiary to take the former will to another person than the original scrivener, and to have a new will made just like the old one, except in the matter of certain specified changes.

*Will—Issue devisavit vel non—Use of intoxicating liquors.*

Where it appears that testatrix at the time she made the will was not affected by intoxication, evidence that she was in the habit of using intoxicating liquors in excess is immaterial.

Argued Jan. 12, 1900. Appeal, No. 160, Jan. T., 1899, by Eliza Knowles et al., from decree of O. C. Phila. Co., July T., 1898, No. 23, refusing an issue devisavit vel non. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Appeal from register of wills.

FERGUSON, J., filed the following opinion:

The appellants in this case are two of the sisters of the testatrix, although neither of them or the other surviving sister took any part in the contest, even to the extent of appearing as witnesses in the case. The acting spirit in the controversy is a niece who had lived with the testatrix for a number of years before her death, and who, no doubt, presumed that from this fact she had a stronger claim upon the bounty of the testatrix than any one else. The testatrix did not look at the matter in the same light, and while she generously treated this niece in her will, there was another whom she preferred. The result has followed that we so often see illustrated in this court. Persons may go through this world without a suspicion of their mental integrity, but, if they should happen to dispose of their estate according to their own view of the fitness of things and not according to the view of some one else, then they are of unsound mind, or have been unduly influenced to make the will in question. All sorts of family skeletons are brought to the light of day, and all the frailties of the unfortunate testator are exposed to the public gaze.

The allegation in this case is that the testatrix, who was seventy-eight years of age, had so impaired her mental facul-

ties by the excessive use of stimulants that she was incapable of making a will, and that, because of this weakness of her intellectual powers, she was unduly influenced to make this will. With regard to her excessive use of stimulants the testimony was so contradictory that it is impossible to reconcile it. There must be untruth upon one side or the other. Upon the part of the appellants the testimony showed that the amount of whisky which this old lady consumed was something enormous. In fact it is incredible that such indulgence could be persisted in for any length of time without serious consequences, and yet this testatrix lived to a good old age. On the other hand, there were numerous witnesses who met this testatrix in her daily walks, at church, in business relations, for she appears to have kept about considerably for one of her age, who not only never saw any indication of intoxication but never detected that she had been indulging in the use of liquor in the slightest degree whatever. It is not necessary that we should attempt to reconcile this testimony. All we are concerned about is whether, when she made the will and the two codicils by which she afterwards republished it, she was in condition to perform these testamentary acts. We are compelled to conclude from the evidence in this case and all the surrounding circumstances that she was.

The husband of the testatrix, from whom her estate was derived, died in September, 1886. He was a widower with two children when she married him. One, a son, William H. Walton, and the other, a daughter, Emma W. Lentz, whose husband, Herman W. Lentz, had been associated in business with the husband of the testatrix during his lifetime, and after his death and down to the time of her death attended to the business affairs of his widow. He was married to the daughter, and there is no doubt had the respect and confidence of the husband during his life, and of the widow afterwards. His relations with the family, including of course this testatrix, were most confidential and friendly. The will in controversy is dated January 26, 1891, and was prepared by a scrivener under directions from Mr. Lentz, and was afterwards executed by the testatrix at Mr. Lentz's house. These circumstances, taken in connection with the relation that existed between them as above referred to, might be viewed

with suspicion, but examined in the light of the facts of this case, to which we will now refer, are without any weight. The estate of the husband of the testatrix was settled in April, 1887. The testatrix received a considerable sum at this settlement in addition to what she had already received from him in his life-time. She determined to make her will, and for that purpose employed Mr. Effingham B. Morris as her attorney. He pre-pared a will, and it was executed by her within eight days after the settlement of her husband's estate. There is no question that at this time the testatrix was in full posses-sion of all her mental faculties, and there is no suggestion that the said will did not express her testamentary wishes without influence from any one. In November of 1887 she made an-other will in which there were some very slight changes from the will executed the previous April, but in substance it was the same. There is no allegation of unsoundness of mind or of undue influence with reference to this will. The will which is in dispute was, as before stated, prepared by direc-tion of Mr. Lentz, but that direction consisted merely in tak-ing the will previously executed to the scrivener and telling him to prepare a new one just like it with the exception that a legacy to her sister, which she struck out with her own hand, was transferred to the niece who is the actor in this litigation. Now, if this will, with reference to the execution of which mental incapacity and undue influence is now al-leged, is substantially the same as the two previous ones, exe-cuted when the testatrix was undoubtedly of sound mind, does not this fact go a great ways to refute the allegations now made with reference thereto? If there had been sub-stantial changes or alterations, particularly if they inured to the benefit of the person who is alleged to have exercised the undue influence, a very different case might have been pre-sented, but in all the wills which she executed Mrs. Lentz, the stepdaughter of the testatrix, and her family were the principal beneficiaries, thus showing that while there may have been other slight changes in the mind of the testatrix with regard to the disposition of her estate, she had always in view the fact that Mrs. Lentz and her family were her first consideration.

There were two codicils to this last will executed. One in

October, 1896, in which she recited the death of her sister, a legatee, whose legacy of $3,000 was added to what had already been given to the niece above referred to. Another codicil was executed in January, 1898, in which she recited the death of her stepdaughter, Mrs. Lentz, and the furniture, household effects, etc., which had been given to her by the will, were also given to the said niece. So that the niece in question benefited by both these codicils, while the Lentz family not only received nothing but part of that which had already been given to them was taken away. These codicils were both prepared by the scrivener who wrote the will. The fact of their execution by the testatrix so many years after the execution of the original document shows clearly that she had a full knowledge of the contents of her will and realized the necessity for a change therein by reason of the death of the two legatees above mentioned.

The testamentary disposition which a person makes of an estate often furnishes an indication as to whether they have or have not capacity to make a will. The will, in this case, is the most natural and businesslike one that any person could possibly make under the circumstances. The testatrix derived her estate from her husband, who had two children by a former marriage. He provided for her by his will as she was naturally and under the law the primary object of his bounty. When the time came for her to dispose of the estate that she had thus derived from him, she very properly considered that his children had the strongest claim to the same. The son had already received his full share of his father's estate, and therefore, after making liberal provisions for her own relations, she gave the most of what she had received to her stepdaughter and her family. This was not only a natural, but a just disposition of her estate, and instead of indicating mental incapacity or weakness is evidence of the greatest wisdom and integrity.

The exceptions in this case are dismissed.

*Error assigned* was the decree of the court.

*John G. Johnson,* with him *Shipley & Vaux* and *J. Warren Coulston,* for appellants, cited Cuthbertson's App., 97 Pa. 163, Wilson's App., 99 Pa. 454, Armor's Est., 154 Pa. 517, Mil-

ler's Est., 179 Pa. 645, Scattergood v. Kirk, 192 Pa. 263,
and Douglass's Est., 162 Pa. 567.

W. S. Roney, with him A. B. Roney, for appellees, cited
Yorke's Est., 185 Pa. 61, Coleman's Est., 185 Pa. 437, Mil-
ler's Est., 179 Pa. 645, and Harrison's App., 100 Pa. 458.

PER CURIAM, February 5, 1900:

There was a grave irregularity in the execution of the first
codicil.  One of the subscribing witnesses did not attest it in
the presence of the testatrix.  But there was a subsequent cod-
icil properly executed and attested, and that codicil contained
an express republication of both the will and the first codicil,
and the latter instrument was thereby validated.

By far the most important contention of the contestants was
the proposition that the legatee, Herman W. Lentz, was the
confidential agent and trusted adviser of the testatrix, and
that he procured the preparation and execution of the will of
1891, under which he took a large part of the estate of the tes-
tatrix, and that he was therefore subject to the rule which re-
quires such persons to give affirmative proof that the will was
the intelligent act of the testatrix, done with a full knowledge
of its contents and also of her property and of the disposition
made of it by the will.  If there were nothing else in the case
but this will the rule invoked would be clearly applicable, be-
cause this legatee did occupy a very close and confidential re-
lation with the testatrix, and he was her trusted adviser, and
he did take a large benefit under the will, and he did intervene
in the preparation and execution of the will.  But it was most
positively and without contradiction shown in the testimony
that in April, 1887, the testatrix executed another will, which
was prepared by Mr. Morris, who was her family solicitor,
from instructions received from her, without any intervention
by Lentz, and by which he received precisely the same legacy
as is contained in the present will.  And Mr. Morris testified
that she was of perfectly sound mind at the time, and there is
no evidence impugning the integrity of that will on this record.
Moreover, the will of 1887 gave nothing but some furniture
and books and pictures to Rosanna Knowles, one of the present
appellants, while the will of 1891 and the first codicil gave her

$6,000 in money, and the second codicil gives her all the furniture, household effects and "personal effects generally" without restriction.   Under the will of 1891 Lentz takes a less valuable interest than he would have taken under the will of 1887. Moreover, it was testified and not contradicted that the only difference between the two wills was a change in some unimportant provisions growing out of the death of one of the legatees.   It was testified by Lentz that there was a second will executed some time in 1887 or 1888, which was subsequently destroyed, and that the testatrix instructed him to take the former will to another person than Mr. Morris and have a new will made just like the old one, except in the matter of the changes, and that this was the way it happened that the last will was written.   There was no evidence to impeach the correctness of this testimony.

In view of these circumstances the rule affecting confidential agents taking benefits under wills which they have prepared or caused to be prepared does not prevail, and we are of opinion that the learned court below was entirely right in refusing its application.   In regard to the habit of using intoxicating liquors in excess, the testimony was most violently contradictory, and if the fate of the case depended upon that consideration it would have to be submitted to a jury.   But the fact itself does not necessarily affect the validity of wills executed by such persons. As the evidence of the condition of the testatrix at the time the will of 1891 and the codicils were executed shows not only that the testatrix was not then affected by intoxication, but that she was in an entirely sound mental condition, and as we fail to discover any evidence showing solicitation by the legatee, Lentz, to have the testatrix leave to him any part of her property, it would not be possible to sustain a verdict against the will on the ground of undue influence, and we do not feel that we can say there was error in the refusal of an issue by the learned court below.   We sustain the action of the court substantially for the reasons stated in the opinion.

Decree affirmed and appeal dismissed at the cost of the appellants.